# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### ABILENE DIVISION

| | | |
|---|---|---|
| JUAN CARLOS DELAROSA, | § | |
| Institutional ID No. 1279704, | § | |
| SID No. 6771382, | § | |
| Previous TDCJ No. 1169932, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 1:08-CV-063-BI |
| THE STATE OF TEXAS, et al., | § | ECF |
| | § | |
| **Defendants.** | § | |

## REPORT AND RECOMMENDATION

Plaintiff, a state prisoner who is proceeding *pro se* and *in forma pauperis*, filed a complaint pursuant to 42 U.S.C. § 1983 in the Southern District of Texas, Houston Division, on May 30, 2008. This case was transferred to the Northern District of Texas, Abilene Division, on June 16, 2008 (Doc. 4). By order entered June 23, 2008 (Doc. 8), this case was transferred to the United States Magistrate Judge. The court entered an order on June 30, 2008, (Doc. 9), setting an evidentiary hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), and 28 U.S.C. § 1915, and instructing Texas Department of Criminal Justice ("TDCJ") officials to provide authenticated copies of Plaintiff's records relevant to the claims alleged in Plaintiff's complaint.

Plaintiff was given leave to file an amended complaint which was filed on August 25, 2008. This case came for a *Spears* hearing on August 26, 2008. Plaintiff appeared at the hearing and testified in his own behalf. Plaintiff did not consent for the case to proceed before the United States Magistrate Judge.

Plaintiff alleges that the Defendants, officials at the John Wallace Unit of the Texas Department of Criminal Justice – Institutional Division ("TDCJ-ID"), subjected Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution by exhibiting deliberate indifference to his serious medical needs and to his health and safety by violating his medical restrictions and delaying his medical care. Plaintiff also claims that the Defendants filed false disciplinary cases against him and made a statement that Plaintiff waved at a member of a notorious prison gang in retaliation for Plaintiff's exercising his rights under the First Amendment.

The court has reviewed Plaintiff's amended complaint pursuant to 28 U.S.C. §1915. The court has also considered Plaintiff's testimony, his supplements to the complaint, and the exhibits proffered at the *Spears* hearing, which have been incorporated into the record. The court makes the following findings of fact and conclusions of law and report and recommendation to the United States District Judge.

## I.    BACKGROUND

In his amended complaint, supplements, and testimony, Plaintiff claims that:

1.      Plaintiff is currently confined to the Pack Unit, TDCJ-ID, in Navasota, Texas. During all times relevant to the claims in his amended complaint, Plaintiff was confined to the Wallace Unit in Abilene, Texas.

2.      On December 25, 2007, Plaintiff was returning from the pill window when he told another inmate who waved at him, "Merry Christmas." Officers Aguirre, Cantu, and Hernandez were standing behind the searcher's desk.

3.      Aguirre came around the desk and swore at Plaintiff, asking him what he was doing. Aguirre told Plaintiff, "You know you are not supposed to talk in the line." Plaintiff replied by

saying, "Where is it posted that I can't say 'Merry Christmas' to another offender on Christmas day?" Aguirre became irate and instructed Plaintiff to remove his clothing.

4.      Plaintiff told Aguirre that he needed a chair to use during a strip search because of medical restrictions imposed for a herniated disk. Aguirre told Plaintiff that he did not care what he had. Plaintiff placed his personal items on top of the unit mailbox and began undressing, and Aguirre yelled at him and scattered his belongings over the walkway.

5.      Aguirre told Plaintiff to bend over and "spread them" three times, with his back facing towards Cantu and Hernandez.

6.      Plaintiff told Aguirre, Cantu, and Hernandez that he was going to file a grievance about the incident and they said that they did not care. Aguirre instructed Plaintiff to pick up his items and leave or he could be locked up.

7.      As Plaintiff was retrieving his personal items, he heard a crack and experienced a sharp pain in his right hip, which felt out of place when he tried to stand up. Aguirre subjected him to cruel and unusual punishment by ignoring Plaintiff's medical restrictions, by failing to allow him to use a chair during the strip search, and by telling Plaintiff to spread his buttocks three times. Plaintiff sustained injuries as a result, including a crack in the right hip.

8.      Plaintiff returned to the building where he was housed where Officers Sosa and Bishop were working the picket. Plaintiff complained to Bishop about the incident with Aguirre. Bishop asked if the officer had performed a cavity search for contraband. Plaintiff told Bishop he wanted to see a rank officer, wanted medical attention, and wanted a grievance form. Bishop told Plaintiff that he could not get a rank officer unless Plaintiff was moving because of threats, that Plaintiff could not get medical attention unless it was an emergency situation and he saw "blood and guts," and that he did not have a grievance form.

9.      When Bishop went to the restroom, Sosa brought Plaintiff some Tylenol.  He later rolled Plaintiff's cell door so that he could lie down, brought him some I-60 inmate request forms, and told Plaintiff that he had called for rank, specifically for Officer Burrola and Sgt. Garcia, but they did not show up.  Bishop subjected him to deliberate indifference to his serious medical needs by delaying his medical care. By failing to respond to Sosa's call for rank, Burrola and Garcia also subjected Plaintiff to a delay in his medical care.

10.      Plaintiff submitted a sick call request and attended a nurse's sick call on December 27, 2007.  Plaintiff was prescribed ibubrofen, and a lay-in with the nurse practitioner was scheduled for December 28, 2007.  The nurse practitioner indicated that Plaintiff had a severe tendon inflammation, prescribed pain medication, and scheduled Plaintiff for x-rays on January 2, 2008.

11.      Plaintiff spoke with Warden Henson and Lt. Medina on December 30, 2007, about the incident.  Henson told Plaintiff that he would make sure that it would not happen again.

12.      Plaintiff filed grievances on December 30, 2007, and on February 23, 2008, both of which were denied.

13.      Plaintiff was transferred to the Montford Unit for treatment by an orthopedic specialist, who told Plaintiff that there was a crack in his hip that had cartilage growing out of it.

14.      After returning to the Wallace Unit, Plaintiff was given a disciplinary case by Cantu for being out of place and for failure to obey an order.  Sgt. Garcia served Plaintiff with the case. Plaintiff alleges that the disciplinary case was in retaliation for the grievances that Plaintiff wrote complaining about Cantu and the December 25, 2007, incident.

15.      Plaintiff complained about the disciplinary case to Officers Burrola, Calderon, Sgt. Rawls, Sgt. Clarkson, Medina, and Sgt. Martinez.

16.     On February 19, 2008, while standing in the commissary line, Plaintiff waved at another inmate. Burrola told Plaintiff to get out of the line for waving at the inmate, saying that the inmate was a member of a notorious prison gang. In doing so, Burrola put Plaintiff's life in danger.

17.     Cantu and Burrola subjected Plaintiff to retaliation.

Plaintiff is seeking declaratory and injunctive relief and an award of compensatory and punitive damages.

## II.     ANALYSIS

In both proceedings *in forma pauperis* and civil actions brought by a prisoner against a governmental entity, officer, or employee, the court is required under 28 U.S.C. §§ 1915-1915A to dismiss the complaint or any portion of the complaint if the complaint is frivolous or malicious or fails to state a claim on which relief may be granted. These provisions thus apply to this *in forma pauperis* prisoner civil rights action. *Harris v. Hegmann,* 198 F.3d 153, 156 (5th Cir. 1999). "An [*in forma pauperis*] complaint may be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) if it has no arguable basis in law or in fact." *Ruiz v. United States*, 160 F.3d 273, 274-75 (5th Cir. 1998). A claim has no arguable basis in law or fact if it is based on an indisputably meritless legal theory or if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless. *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). The court is authorized *sua sponte* to test whether the case is frivolous or malicious even before the service of process or before an answer is required to be filed. *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990); *see also* 42 U.S.C. § 1997e(c)(1). A questionnaire or evidentiary hearing may be used to assist the court in determining whether the case should be dismissed under these provisions. *See Watson v. Ault*, 525 F.2d 886, 892 (5th Cir. 1976) (use of questionnaire to develop the factual basis of the plaintiff's complaint); *Spears,* 766 F.2d 179 (use of an evidentiary hearing).

The court has conducted a review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915(d), as supplemented by his *Spears* hearing testimony and the exhibits and supplements to the complaint which were submitted at the time of the *Spears* hearing.

## A.     Claims Arising from the December 25, 2007, Incident

Plaintiff alleges that he was subjected to cruel and unusual punishment and deliberate indifference to his health and safety by Officers Aguirre, Cantu, and Hernandez during the December 25, 2007, incident during which he was subjected to a strip search and was not provided a chair to use.

In order to state a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000).

It is recognized that "prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987). The protections afforded prisoners specifically include the Eighth Amendment's prohibition against cruel and unusual punishment. *See Whitley v. Albers*, 475 U.S. 312, 318, (1986). Punishment rises to the level of cruel and unusual only where it involves an "'unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).

"The Constitution 'does not mandate comfortable prisons' . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989) (internal citation omitted). The Eighth Amendment's prohibition against cruel and unusual punishment imposes minimum requirements on prison officials in the treatment received by and facilities available to prisoners. *Woods v. Edwards*, 51 F.3d 577,

581 (5th Cir. 1995). However, the Eighth Amendment does not afford protection against mere discomfort or inconvenience. *Id.*

The Supreme Court has defined the requirements for making an Eighth Amendment claim as containing both objective and subjective components. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). The objective component requires proof that the deprivation was sufficiently serious. *Id.* To meet the objective component, "extreme deprivations are required . . . ." *Davis v. Cox,* 157 F.3d 1003, 1006 (5th Cir. 1998) (citing *Hudson v. McMillian,* 503 U.S. 1, 8 (1992)). Under a "totality of conditions test," conditions of confinement must not impose the wanton and unnecessary infliction of pain. *Austin v. Johnson,* 328 F.3d 204, 209 (5th Cir. 2003).

The subjective component is met by a prison official who is deliberately indifferent to an inmate's health or safety. In this context, to be deliberately indifferent, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Adames v. Perez,* 331 F.3d 508, 512 (5th Cir. 2003). In other words, the prison official must be subjectively aware of a substantial risk of serious harm to the inmate and fail to protect the inmate from that harm. *Farmer,* 511 U.S. at 839-40. Thus, the "'failure to alleviate a significant risk that [the official] should have perceived, but did not,' is insufficient to show deliberate indifference." *Domino v. Texas Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Farmer,* 511 U.S. at 838).

"To violate the Cruel and Unusual Punishment Clause, a prison official must have a 'sufficiently culpable state of mind.'" *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999) (quoting *Farmer,* 511 U.S. at 834). The "applicable *mens rea* of deliberate indifference demands subjective knowledge of a substantial health risk." *Gobert v. Caldwell*, 463 F.3d 339, 348 (5th Cir. 2006). Thus, "[t]he deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the [ ] officials were actually aware of the risk, yet consciously disregarded it." *Lawson v. Dallas*

*County,* 286 F.3d 257, 262 (5th Cir. 2002). A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious bodily harm and he disregards that risk by failing to take reasonable measures to abate it." *Gobert*, 463 F.3d at 346 (citing *Farmer*, 511 U.S. at 847); *Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994)). Prison officials must "know of and disregard [the] excessive risk to inmate health or safety." *Hall*, 190 F.3d at 697 (citations and brackets omitted). "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants." *Id.* (quoting *Farmer*, 511 U.S. at 834).

Thus, to prevail on a section 1983 failure to protect claim, a prisoner must demonstrate that "he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.'" *Jones v. Greninger,* 188 F.3d 322, 326 (5th Cir. 1999) (quoting *Newton v. Black,* 133 F.3d 301, 308 (5th Cir. 1998)).

The deliberate indifference requirement is more than mere negligence. *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001). Mere negligence or neglect does not constitute deliberate indifference. *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979).

Plaintiff alleges that the strip search, during which Aguirre instructed him to spread his buttocks three times, constituted cruel and unusual punishment. Plaintiff further alleges that Aguirre was deliberately indifferent to his health and safety by subjecting him to a strip search without allowing him to use a chair, which he contends is necessary because of medical restrictions imposed for a herniated disk.

The court notes that Plaintiff's claim that he was subjected to an unreasonable search should be analyzed under the Fourth rather than the Eighth Amendment. *See Moore v. Carwell*, 168 F.3d 234, 237 (5th Cir. Tex. 1999). In *United States v. Lilly* the Fifth Circuit noted that an institution needs "neither a warrant nor probable cause to conduct a search or seizure in the prison context

because of prisoners' decreased expectations of privacy and because of the exigencies inherent in the prison environment." 576 F.2d 1240, 1244 (5th Cir. Tex. 1978). An inmate does, however, retain some Fourth Amendment protection. *Id*. The Fourth Amendment mandates that searches or seizures conducted on prisoners must be reasonable under all the facts and circumstances in which they are performed. *Id*. The burden of proving reasonableness is a light burden because an administrator's decisions and actions in the prison or jail context are entitled to great deference. *Elliott v. Lynn*, 38 F.3d 188, 191 (5th Cir. 1994).

Plaintiff testified that the search was unreasonable because Aguirre verbally abused Plaintiff during the search, did not provide him with a chair to use, and forced Plaintiff to expose himself three times, when one time should have been enough. However, verbal abuse by a prison official does not give rise to a cause of action under § 1983. *See Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir.1993). Plaintiff's claim regarding the use of the chair is addressed separately. Plaintiff testified that he was searched after leaving the pill window line. Plaintiff's allegations, accepted as true, fail to demonstrate that being required to spread his buttocks three times instead of one time was unreasonable. However, Plaintiff also alleges that he was subjected to this strip search in front of Cantu (who is apparently female) and Hernandez, as well as in view of numerous inmates. He alleges that he was required to spread his buttocks with his back facing Cantu and Hernandez. Accepting Plaintiff's allegations as true, the court is unable to find that Plaintiff's claim of unreasonable search under the Fourth Amendment (to the extent that he exerted such a claim) lacks an arguable basis in law or fact. Therefore, the court recommends that Defendant Aguirre be ordered to answer or otherwise plead to Plaintiff's claim that he was subjected to an unreasonable search in violation of the Fourth Amendment. Plaintiff's Eighth Amendment claim is without a basis in law or fact, and the court recommends that such claim be **DISMISSED WITH PREJUDICE AS FRIVOLOUS**.

Plaintiff also alleges that he told Aguirre that he needed a chair in order to proceed with the search because of his medical restrictions. He alleges that the risk to him was obvious and that Aguirre was deliberately indifferent to the substantial risk of serious harm posed by undergoing the search without a chair. Plaintiff alleges that he sustained an injury to his hip while retrieving his items after the search.

A prisoner's claim that an official violated his Eighth Amendment rights by failing to protect is subject to a standard different from conditions-of-confinement claims. "To prevail on a section 1983 failure to protect claim, a prisoner must demonstrate that 'he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.'" *Jones,* 188 F.3d at 326 (quoting *Newton,* 133 F.3d at 308). The deliberate indifference standard in a failure to protect claim is subjective, not objective. It requires proof that the official actually knew of a substantial risk of serious harm and failed to act. *Farmer,* 511 U.S. 825, 832-34. What the official should have known is not a part of this standard. *Id.* at 837-38.

Plaintiff testified that his work-related medical restrictions include no bending at the waist, no squatting, and no climbing. Plaintiff testified that other officers allowed him to use a chair when he was searched but Aguirre did not. Plaintiff testified that he sustained an injury to his hip, which has caused him great pain and which has required continuing medical care as a result. Accepting Plaintiff's allegations as true, the court is unable to find that Plaintiff's Eighth Amendment claim against Aguirre for deliberate indifference to Plaintiff's health and safety or serious medical needs by requiring Plaintiff to violate his medical restrictions lacks an arguable basis in law or in fact. The court, therefore, recommends that Aguirre be ordered to answer or otherwise plead to Plaintiff's claim that Aguirre subjected him to cruel and unusual punishment in the form of deliberate

indifference to Plaintiff's health and safety or serious medical needs[1] by requiring him to violate his medical work restrictions during a strip search after being made aware of such restrictions.

Plaintiff also asserted claims against Cantu and Hernandez arising out of the December 25, 2007, strip search. In order to state a cause of action under section 1983, the plaintiff must identify defendants who were either personally involved in a constitutional violation or whose acts were causally connected to the constitutional violation alleged. *Woods*, 51 F.3d at 583. Personal involvement is an essential element of a civil rights cause of action. *Thompson v. Steele*, 709 F. 2d 381, 382 (5th Cir. 1983). Prison officials "cannot be automatically held liable for the errors of their subordinates." *Adames*, 331 F.3d at 513. Supervisory officials may be held liable only if: "(i) they affirmatively participate in the acts that cause constitutional deprivations; or (ii) [they] implement unconstitutional policies that causally result in plaintiff's injury." *Mouille v. City of Live Oak, Tex.,* 977 F.2d 924, 929 (5th Cir. 1992). Vicarious liability does not apply to § 1983 claims. *Pierce v. Tex. Dep't of Crim. Justice, Institutional Div.,* 37 F. 2d 1146, 1150 (5th Cir. 1994).

Plaintiff testified that his claims against Cantu and Hernandez are based on their failure to prevent the strip search from happening. Plaintiff's allegations fail to demonstrate that the Defendants were aware of a substantial risk of serious harm to Plaintiff posed by the search or that they ignored such a risk. Plaintiff's allegations fail to demonstrate that Cantu or Hernandez were personally involved in the alleged constitutional deprivation. Therefore, any and all claims asserted against Cantu and Hernandez arising out of the search by Aguirre on December 25, 2007, lack an

---

[1]     Plaintiff couched this claim as one for cruel and unusual punishment. Relevant caselaw suggests that a claim for assignment to work which exceeds medical restrictions may constitute cruel and unusual punishment in the form of either deliberate indifference to health and safety or deliberate indifference to serious medical needs, and the court has analyzed this claim as such.

arguable basis in law or fact. The court, therefore, recommends that such claims be **DISMISSED WITH PREJUDICE AS FRIVOLOUS**.

**B.      Deliberate Indifference to Serious Medical Needs - Delay in Treatment**

Plaintiff alleges that he was subjected to deliberate indifference to his serious medical needs in the form of a delay in medical treatment by Bishop, Burrola, and Garcia. Plaintiff alleges that he sustained an injury on December 25, 2007; that Sosa told Plaintiff at 11:30 p.m. that he had called for Burrola and Garcia, the ranking officers, but they had not come; and that Plaintiff attended a nurse's sick call and received treatment on December 27, 2007.

In the context of medical care, or lack of care, the Eighth Amendment prohibits the unnecessary and wanton infliction of pain or care repugnant to the conscience of mankind. *Estelle*, 429 U.S. at 104-06. Not every claim of inadequate or improper medical treatment is a violation of the Constitution, however. *Id.* at 105-07. To establish an Eighth Amendment medical claim for cruel and unusual punishment, Plaintiff must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. A complainant must show that a prison official's state of mind was "one of 'deliberate indifference' to inmate health or safety." *Farmer,* 511 U.S. at 834. "The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the jail officials were actually aware of the risk, yet consciously disregarded it." *Lawson,* 286 F.3d at 262. Thus, the prison official must "know of and disregard [the] excessive risk to inmate health or safety." *Hall*, 190 F.3d at 697 (citations and brackets omitted). Moreover, "the facts underlying a claim of 'deliberate indifference' must *clearly evince* the medical need in question and the alleged official dereliction." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (citing *Woodall v. Foti*, 648 F.2d 268 (5th Cir. 1981)). "To violate the Cruel and Unusual Punishment Clause, a prison official must have a 'sufficiently culpable state of mind.'" *Hall*, 190 F.3d at 697

(quoting *Farmer*, 511 U.S. at 834). "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants." *Id.*

The deliberate indifference requirement is more than mere negligence in failing to supply medical treatment. *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001). A complaint "that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Hall*, 190 F.3d at 697 (citing *Estelle*, 429 U.S. at 105). Neither "'negligence, neglect or medical malpractice'" gives rise to a § 1983 cause of action. *Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1991) (citing *Johnson,* 759 F.2d at 1238). "[N]egligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the basis for a civil rights action." *Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993). A negligent or "inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Estelle,* 429 U.S. at 105-06. While inadequate treatment "may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." *Stewart v. Murphy,* 174 F.3d 530, 534 (5th Cir. 1999). Thus, mere "negligence is insufficient to support a finding of liability"; the Plaintiff must show that the Defendants were "deliberately indifferent." *Adames*, 331 F.3d at 514.

Deliberate indifference is also more than disagreement between patient and doctor as to the appropriate treatment, except in exceptional circumstances. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) ([A]bsent exceptional circumstances, a prisoner's disagreement with his medical treatment is not actionable under § 1983.). Moreover, "[u]nsuccessful medical treatment does not give rise to a § 1983 cause of action." *Varnado*, 920 F.2d at 321 (citing *Johnson*, 759 F.2d at 1238); *Fielder v. Bosshard,* 590 F.2d 105, 107 (5th Cir. 1979).

Rather, to show deliberate indifference to his serious medical needs, the Plaintiff must demonstrate that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino*, 239 F.3d at 756 (quoting *Johnson*, 759 F.2d at 1238). Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *Banuelos*, 41 F.3d at 235 (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir.1993)).

Plaintiff's allegations indicate that although Burrola and Garcia did not respond to Sosa's call for rank, Plaintiff was provided with I-60 forms by Sosa, which he used to submit a sick call request. Plaintiff testified that the I-60 form is the way that inmates make requests for medical attention. He testified that he completed and submitted an I-60 form in the early morning hours of December 26, 2007, and dropped it off on his way to breakfast. He testified that he received a response on December 27, 2007. Plaintiff's testimony demonstrates that he was seen at the nurse's sick call on that same date and was prescribed ibuprofen. Plaintiff's testimony also demonstrates that a lay-in with a nurse practitioner was scheduled for the next day, and that he was thereafter provided with additional treatment, including a different pain medication, crutches, x-rays, and treatment by an orthopedic specialist at the Montford Unit hospital.

Plaintiff alleges that he was subjected to deliberate indifference by Bishop, Burrola, and Garcia in the form of delay in receiving medical treatment. He had to wait until 11:30 p.m. before he received the I-60 forms from Sosa and turned in the I-60 form seeking medical treatment in the early morning hours of December 26, 2007.

Delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm. *Mendoza*, 989 F.2d at 195. Plaintiff must also show that the Defendants had a sufficiently culpable state of mind. *Id*. Plaintiff testified that

he experienced pain while waiting to see the medical department. However, Plaintiff's testimony does not indicate that he sustained any additional injury as a result of the delay. Plaintiff's testimony fails to demonstrate that Burrola or Garcia were personally involved or exhibited deliberate indifference with regard to Plaintiff's medical treatment. Plaintiff testified that they failed to respond to Sosa's request for a rank officer. While this may constitute negligence, such failure does not in this instance demonstrate either personal involvement or deliberate indifference. Plaintiff alleges that Bishop refused to get him medical attention but he also testified that on that same night, Sosa gave him the I-60 form he needed to request medical treatment, and his testimony fails to demonstrate additional injury because he had to wait until Sosa gave him the forms, some hours after Bishop told him he would not get to see medical unless he saw "blood and guts."

The court has carefully considered Plaintiff's allegations and has accepted all of his assertions as true. However, it is nevertheless clear that Plaintiff has failed to state a cognizable constitutional claim for deliberate indifference to serious medical needs in the form of delay of medical treatment against Bishop, Burrola, Garcia, or any other Defendant. Therefore, the court recommends that this claim be **DISMISSED WITH PREJUDICE AS FRIVOLOUS**.

### C. Retaliation Claims

Plaintiff alleges that he was subjected to retaliation by Cantu because she filed false disciplinary cases and by Burrola because he made a statement in front of other prisoners indicating that Plaintiff had waved to a notorious member of a prison gang. Plaintiff testified that on December 30, 2007, he filed a grievance about the December 25, 2007, incident, which referred to Cantu. He indicated that he was given a disciplinary case by Cantu on January 12, 2008. Plaintiff alleges that this was a false disciplinary case and was in retaliation for his previous complaints about Cantu.

Insofar as Plaintiff's amended complaint may be construed to include a claim that Cantu initiated disciplinary proceedings against him without probable cause, the court notes that malicious prosecution no longer provides an independent basis for a section 1983 claim in the Fifth Circuit. *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003) ("[N]o . . . freestanding constitutional right to be free from malicious prosecution exists."). Thus, an inmate's claim that an officer initiated disciplinary proceedings against him without probable cause does not state a claim. *Id.* To the extent that Plaintiff claims that Cantu brought a false disciplinary against him, Plaintiff's claims fail to state a claim upon which relief may be granted. The court, therefore, recommends that such claim be **DISMISSED WITH PREJUDICE AS FRIVOLOUS.**

To sustain a § 1983 retaliation claim, Plaintiff must establish: (1) the existence of a specific constitutional right; (2) the defendant's intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation. *Freeman v. Tex. Dep't of Crim. Justice,* 369 F.3d 854, 863 (5th Cir. 2004) (citing *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)). The plaintiff "must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred." *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996). The inmate must allege more than his personal belief that he is the victim of retaliation. *Jones*, 188 F.3d at 325. Mere conclusory allegations of retaliation are insufficient to support a claim of retaliation. *Id.* The plaintiff "must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods*, 60 F.3d at 1166. Plaintiff is required to "produce direct evidence of motivation" or "allege a chronology of events from which retaliation may plausibly be inferred." *Id.*

The court is unable to find at this juncture that Plaintiff has failed to allege a cognizable claim against Cantu for retaliation. The court, therefore, recommends that Cantu be ordered to

answer or otherwise plead to Plaintiff's claim that Cantu retaliated against him for the December 30, 2007, grievance about her by filing the January 12, 2008, disciplinary case against him for being out of place and for failure to obey a direct order.

Plaintiff also alleges that Burrola retaliated against him on February 19, 2008. Plaintiff alleges that he was in line at the pill window and waved to another prisoner. Burrola told him to get out of line for waving to the other inmate, telling him that the inmate was a member of a prison gang. Plaintiff alleges that in doing so, Burrola may have intimated that Plaintiff is a gang member. Plaintiff alleges that this was in retaliation for a grievance that he filed about Burrola. However, the grievance that Plaintiff has provided the court is about the waving incident itself. Plaintiff alleges that he spoke with Burrola about the case brought by Cantu, and Burrola had told Plaintiff not to worry about it.

Plaintiff's allegations fail to demonstrate that he engaged in a constitutionally protected activity for which Burrola retaliated against him. Plaintiff's testimony also fails to demonstrate a retaliatory adverse act or causation. Moreover, the chronology of events as asserted by Plaintiff is not one from which retaliation by Burrola can be reasonably inferred. Mere conclusory allegations of retaliation are insufficient to support a claim of retaliation. *Id.* Plaintiff relies entirely on his conclusory allegations of retaliation, which are not sufficient to state a First Amendment retaliation claim. The court, therefore, recommends that Plaintiff's retaliation claim against Burrola be **DISMISSED WITH PREJUDICE AS FRIVOLOUS**.

### D.     Claims against the State of Texas

Plaintiff has included the State of Texas as a Defendant in this case. The Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983. *Aguilar v. Tex. Dep't of Crim. Justice, Institutional Div.*, 160 F.3d 1052, 1054 (5th Cir. 1998) (citing *Farias v. Bexar County Bd. of Trustees for Mental Health Mental Retardation Servs.*, 925 F.2d 866, 875 n.9 (5th Cir.

1991)).  A state's sovereign immunity is not waived for claims pursuant to §1983.  *Id.* (citing *Quern v. Jordan*, 440 U.S. 332, 338 n.7 (1979)).  Moreover, the State of Texas has not consented to this suit.  *Id.* (citing *Emory v. Tex. State Bd. of Med. Exam'rs*, 748 F.2d 1023, 1025 (5th Cir. 1984)).  As an instrumentality of the state, the TDCJ-ID is immune from a suit for money damages under the Eleventh Amendment.  *Talib*, 138 F.3d at 213.  Federal claims against state employees in their official capacities are the equivalent of suits against the state.  *Ganther v. Ingle*, 75 F.3d 207, 209 (5th Cir. 1996).  The Eleventh Amendment immunity thus extends to TDCJ officers acting in their official capacity.  *Aguilar*, 160 F.3d at 1054.

In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court carved out an exception to Eleventh Amendment immunity noting that a state cannot confer authority on its officers to violate the Constitution or federal law.  *See Aguilar*, 160 F.3d at 1054.  However, under this exception an individual official may be liable only for implementing a policy that is "itself [ ] a repudiation of constitutional rights" and "the moving force of the constitutional violation."  *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (citing *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir. 1985)).  While Plaintiff has alleged certain unconstitutional acts by the other named Defendants, his allegations fail to demonstrate any such policy.  Therefore, Plaintiff's claims against the State of Texas and against the Defendants in their official capacities lack an arguable basis in fact, and the court, therefore, recommends that such claims be **DISMISSED WITH PREJUDICE AS FROVOLOUS**.

### III.    CONCLUSION, RECOMMENDATION, AND TRANSFER

The court has considered Plaintiff's allegations in his amended complaint, his testimony, his exhibits, and the law and recommends that the United States District Judge take the following actions:

1. **DISMISS WITH PREJUDICE AS FRIVOLOUS** Plaintiff's claims against Defendants Hernandez and Cantu that he was subjected to cruel and unusual punishment in the form of deliberate indifference to his serious medical needs or his health and safety.

2. **DISMISS WITH PREJUDICE AS FRIVOLOUS** Plaintiff's claim against all Defendants, except Aguirre, that he was subjected to cruel and unusual punishment in the form of a strip search.

3. **DISMISS WITH PREJUDICE AS FRIVOLOUS** Plaintiff's claims against Bishop, Burrola, and Garcia that he was subjected to cruel and unusual punishment in the form of deliberate indifference to his serious medical needs and delay in medical treatment.

4. **DISMISS WITH PREJUDICE AS FRIVOLOUS** Plaintiff's claim against Burrola that Plaintiff was subjected to retaliation for the grievance that he wrote about Burrola.

5. **DISMISS WITH PREJUDICE AS FRIVOLOUS** Plaintiff's claim against the State of Texas and against the other named Defendants in their official capacities.

6. **ORDER AN ANSWER OR OTHER RESPONSIVE PLEADING** by Officer Aguirre on Plaintiff's claim that he was subjected to an unreasonable strip search on December 25, 2007.

7. **ORDER AN ANSWER OR OTHER RESPONSIVE PLEADING** by Officer Aguirre on Plaintiff's claim that he was subjected to cruel and unusual punishment in the form of deliberate indifference to his serious medical needs or health and safety on December 25, 2007, when he underwent a strip search without the use of a chair.

8. **ORDER AN ANSWER OR OTHER RESPONSIVE PLEADING** by Officer Cantu on Plaintiff's claim that he was subjected to retaliation in the form of a false disciplinary case.

9.      **DISMISS** the State of Texas and Officers Hernandez, Burrola, Garcia, and Bishop from all claims in this case.

Any pending non-dispositive motions not otherwise addressed above are **DENIED**.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1) and Rule 4 of Miscellaneous Order No. 6, For the Northern District of Texas, any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 11 days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory, or general objections.  A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S.Ct. 466, 472 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within 11 days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

A copy of this order shall be sent by first class mail to all parties appearing *pro se* and  to any attorney of record by first class mail or electronic notification.

**IT IS ORDERED** that the transfer of this case to the United States Magistrate Judge is terminated, and the case is hereby transferred to the docket of United States District Judge Sam R. Cummings.

DATED this 17th day of February, 2009.

PHILIP R. LANE
UNITED STATES MAGISTRATE JUDGE